FRANCES ELLIOTT CLARK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54735. Promulgated August 22, 1933.

*A. E. James, Esq.*, for the petitioner.
*Arthur Carnduff, Esq.*, for the respondent.

OPINION.

LEECH: The petitioner, an individual residing at Camden, New Jersey, filed an income tax return for the calendar year 1928, in which she reported, *inter alia*, the receipt of $24,120 from the sale of Victor Talking Machine Co. stock, that the cost thereof was $5,580.50 and that the gain realized amounted to $18,539.50. The Commissioner determined that she received $46,917 for such stock, that the stock cost her $10,408.71 and that she realized a taxable gain of $36,508.29. The Commissioner increased petitioner's income by the amount of $17,968.79 and determined the deficiency in controversy in the amount of $2,620.81. Our inquiry is the correct amount of taxable gain realized in 1928 from petitioner's sale of 470 shares of common stock of the Victor Talking Machine Co. (hereinafter referred to as the Victor Co.).

On March 8, 1918, petitioner purchased 10 shares of the common capital stock of the Victor Co. for $4,003 and, on February 21, 1922, she purchased 10 additional shares for $5,090. Those 20 shares were purchased pursuant to the terms of an employees' agreement which provided, briefly, that certain trustees, named by the Victor Co., agreed to sell and petitioner agreed to buy the stock at 70 percent of the then book value thereof, to be paid for within five years and the unpaid balance to bear interest at 3 percent per annum. The agreement further provided that petitioner should hold title to such stock only while employed by the Victor Co.; that she should not sell or dispose of her interest in the stock without first giving the trustees 60 days notice in writing, during which time the trustees could repurchase the stock at 70 percent of its then book value; and that if the trustees elected not to repurchase the stock they should endorse it as being free from all conditions and restrictions. When the stock was fully paid for the certificates issued to the employee bore an endorsement setting forth such conditions and restrictions as to the sale thereof.

In November 1922, the Victor Co. declared a stock dividend of six shares of common stock for each share of the same class of stock then outstanding. Petitioner received thereby 120 additional shares of common stock subject to this restriction as to sale. The original certificates remained outstanding and as a result petitioner then owned 140 shares of common stock which had cost her $9,093.

On January 29, 1927, the Victor Co., in exchange for such 140 shares of common stock, issued to petitioner, subject to the same restrictions as to sale, 231 shares of common stock, 84 shares of 7

percent preferred stock and 49 shares of 6 percent convertible preferred stock.

In 1926 some of the employees of the Victor Co. petitioned the trustees to either repurchase their stock or remove the restrictions thereon. At various times up to September 1927, the trustees repurchased a total of 1,755 shares on the basis of 70 percent of the then book value, which was $154.04 per share for the common stock prior to January 29, 1927, and subsequent to that date, $38.40 per share of common, $98.40 per share for prior preferred and $90.40 per share for convertible preferred.

On December 23, 1927, the Victor Co. removed the restrictions on the stock acquired and then owned by its employees under the aforementioned agreement by retiring and canceling the old certificates and issuing therefor new certificates for the same number and kind of shares free of all restrictions. On that date petitioner received new certificates, free of all restrictions, for 231 shares of common, 84 shares of 7 percent prior preferred and 49 shares of 6 percent convertible preferred. On March 30, 1928, petitioner converted the said 49 shares of convertible preferred stock to 98 shares of common stock.

Due to the above mentioned stock dividend, exchange and conversion, the petitioner's original 20 shares of common stock, purchased at a cost of $9,093 under an employees' agreement, resulted in her ownership of 329 shares of common stock and 84 shares of 7 percent prior preferred stock free of all restrictions as to sales.

During the years 1923, 1924, and 1926, petitioner purchased on the open market 60 shares of Victor Co. common stock, free of all restrictions, at a total cost of $7,812.50.

On January 29, 1927, the Victor Co., in exchange for such 60 shares of common stock, issued to petitioner 99 shares of common, 36 shares of 7 percent prior preferred and 21 shares of 6 percent convertible preferred. On March 30, 1928, petitioner converted the 21 shares of convertible preferred stock into 42 shares of common stock. As a result of petitioner's purchase of 60 shares of common stock in the open market and the exchange and conversion, she owned 141 shares of common and 36 shares of 7 percent prior preferred, at a cost of $7,812.50.

The fair market values per share of the three classes of the Victor Co. stock were the following amounts on the following dates:

|  | Jan. 29, 1927 | Dec. 23, 1927 | Mar. 30, 1928 |
|---|---|---|---|
| Common | $38.00 | $52.62½ | $85.12½ |
| 7% prior preferred | 98.00 | 101.75 | |
| 6% convertible preferred | 90.00 | 108.50 | |

Petitioner made the following sales of Victor Co. common stock and received therefor the following amounts:

| Date of sale | Shares | Amount received |
|---|---|---|
| Feb. 10, 1928 | 99 | $5,918.60 |
| Mar. 8, 1928 | 131 | 9,800.00 |
| May 4, 1928 | 100 | 9,969.00 |
| Nov. 27, 1928 | 140 | 21,229.40 |
| Total | 470 | 46,917.00 |

Petitioner did not sell or otherwise dispose of her 120 shares of 7 percent prior preferred stock during 1928.

On January 29, 1927, petitioner owned 200 shares of Victor Co. common stock which she had acquired at a total cost of $16,905.50, such 200 shares including the 60 shares purchased on the open market, the 20 shares purchased under the employees' agreement, and the 120 shares acquired by the stock dividend of November 1922. On January 29, 1927, when the Victor Co., in exchange for such 200 shares of common stock, issued to petitioner 330 shares of common, 120 shares of 7 percent prior preferred and 70 shares of 6 percent convertible preferred, did she realize taxable gain which must be added to the original cost in determining the basis for computing gain on the sale in 1928? Our first consideration is the status under the pertinent taxing act of the transaction of January 29, 1927, by which petitioner received certain shares of two classes of preferred and new common stock for old common stock in the Victor Talking Machine Co.

Petitioner directs our attention to *Tillotson Mfg. Co.*, 27 B.T.A. 913. There, a corporation, having both preferred and common capital stock, used unissued common stock in payment of a then declared accumulated dividend on preferred stock—some of the preferred stockholders receiving cash in lieu of such common stock. We held this distribution not a stock dividend because it " was not a proportional redistribution of existing or inchoate rights. There was a substantial change in the stockholders' interests not only of this petitioner but of all other stockholders." But in *Pearl B. Brown, Executrix*, 26 B.T.A. 901, where, in increasing corporate capitalization, then consisting of common stock alone, preferred and an increased amount of common stock was issued and distributed to the old stockholders in exchange for and in the same proportion as the old stock was held, we decided, in construing section 201 (f) of the Revenue Act of 1926,[1] which is the applicable statutory pro-

---

[1] SEC. 201 (f). A stock dividend shall not be subject to tax.

vision here, that such distribution was a stock dividend since it was " a proportionate distribution among existing shareholders of new certificates reflecting their unchanged interests in the corporation— a mere proliferation of existing interests."

Consistent with the rule there announced, within which the present facts fall, so far as the record discloses, the respondent here determined the pending deficiency upon the basis that the disputed distribution resulted in no recognized income and therefore no increase in the basis for determination of gain or loss in the later disposition of the stock so received. Petitioner has failed to show any facts contradicting the existence of the basis of fact upon which this determination was made. She has not shown affirmatively that this stock distribution was not " a proportionate distribution among existing shareholders of new certificates reflecting their unchanged interest in the corporation, a mere proliferation of existing interests." Accordingly, upon the authority of the *Brown* case, *supra*, we sustain the respondent on this issue and hold that petitioner received thereby a stock dividend, which neither constitutionally, *Eisner* v. *Macomber*, 252 U.S. 189, nor by statute, section 201 (f) of the Revenue Act of 1926, *supra*, is subject to income tax.

Petitioner's further contention on this point that such an exchange of stock for stock is not within section 203 (b) (2) of the same act [2] is aptly and properly answered by our decision in the *Brown* case just cited. We there said:

It is not necessary to analyze the statute to determine whether the 1922 issue involved an exchange of property in reorganization, for this could not be definitely determined in this proceeding. Since reorganization is defined to include recapitalization, it is possible that the statutory provisions literally overlap; but this construction would probably be avoided in resolution of the apparent confusion thus created. For a stock dividend is constitutionally free from tax, and there would be much to consider before applying the exchange provisions to its substantial equivalent, either to tax it thereby or to find it doubly free.

In determining the gain or loss upon subsequent disposition of the stock, the original cost of the common stock owned immediately prior to January 29, 1927, must be allocated between the three classes of stock received on that date upon the basis of that proportion which the fair market value of each class bears to the total fair market value of all three classes on that date, *Glenn H. Curtiss*, 21 B.T.A. 629; affd., 57 Fed. (2d) 847; *Edward Stephen Harkness*, 21 B.T.A.

---

[2] Sec. 203 (b) (2). No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

1068; *Clifford Hemphill*, 25 B.T.A. 1351; *Theodore W. Case et al., Trustees*, 26 B.T.A. 1044, as follows:

$\dfrac{8,778}{21,420}$ of \$9,093=cost apportioned to 231 shares of common.

$\dfrac{8,232}{21,420}$ of \$9,093=cost apportioned to 84 shares of 7% prior preferred.

$\dfrac{4,410}{21,420}$ of \$9,093=cost apportioned to 49 shares of 6% convertible preferred later converted to 98 shares of common.

$\dfrac{3,762}{9,180}$ of \$7,812.50=cost apportioned to 99 shares of common.

$\dfrac{3,528}{9,180}$ of \$7,812.50=cost apportioned to 36 shares of 7% prior preferred.

$\dfrac{1,890}{9,180}$ of \$7,812.50=cost apportioned to 21 shares of 6% convertible preferred later converted to 42 shares of common.

The remaining issue in the inquiry is whether on December 23, 1927, the petitioner realized taxable gain as a result of the Victor Co.'s removal of the restriction as to sale of the stock acquired under the employees' agreement and the stock dividends thereon. Petitioner urges that the removal of the restriction resulted in taxable gain to the extent of the difference between 70 percent of the book value of such stock and its fair market value on that date and, further, that such gain must be added to the prior cost basis of each class of stock in determining the gain realized upon the sales consummated in 1928.

Petitioner argues that since the employee of a corporation may realize taxable gain by receipt of a distribution of stock in its entirety, *Rodrigues* v. *Edwards*, 40 Fed. (2d) 408, or by the exercise of a valuable option similarly received, *Albert Russel Erskine*, 26 B.T.A. 147, it is not only logical but necessary to prevent a ready means of tax avoidance that the doctrine be extended to the receipt of a cancellation of a contractual right, as is present here.

There are several compelling reasons why this contention can not prevail. The premise upon which it rests is the presence of consideration, in the form of compensation for the rendition of past or future services, in the contract by the execution of which the stock, valuable exercised rights or the cancellation were received. Cf. *Rodrigues* v. *Edwards, supra; Albert Russel Erskine, supra.* The present record discloses no such factual basis.

There may be no doubt that the removal of the restrictions, effected by the exchange, was beneficial to the holders of the restricted stock. Similarly, it may be assumed the company received benefit therefrom. In any event there is nothing in the record before us establishing the existence of consideration in the form of compensation for past or future services or otherwise except the respective stocks involved, for the disputed exchange. Mutual benefit resulting therefrom is

not alone sufficient upon which to find a consideration. *Gardner-Governor Co.*, 27 B.T.A. 1171.

The contractual right which was voluntarily canceled by this exchange of stock was no more than a mere option or right to repurchase at a specified price, reserved by the company through its trustees. Neither a sale by the employees nor a purchase by the company was compulsory.

There is nothing apparent in the record before us upon which a market value of this unexecuted option or right can be fixed. Reg. 69, art 39, approved in *Kirkland* v. *Burnet*, 57 Fed. (2d) 608; *Philip D. C. Ball*, 27 B.T.A. 388, and cases cited therein. But even if there were, since the unexecuted option would not be taxable income in the hands of the Victor Talking Machine Co., conversely, no taxable income and therefore no gain or consequent increase in basis for determination of gain upon a later disposition of the stock received in such exchange could result to petitioner by the receipt of its cancellation. Cf. *Miles* v. *Safe Deposit & Trust Co. of Baltimore*, 259 U.S. 247; *T. I. Hare Powel*, 27 B.T.A. 55. We conclude that the exchange of December 23, 1927, by which the petitioner received common and two classes of preferred stock without restriction thereon as to its disposition for an equal number of the respective classes of such stock so restricted, is within the provisions of section 203 (b) (1) of the Revenue Act of 1926.[3]

It follows that the basis for determining the gain realized upon the sale of 470 shares of Victor Co. stock in 1928, is that appearing at the conclusion of our discussion of the first issue.

*Judgment will be entered under Rule 50.*

---

[3] SEC. 203 (b) (1). No gain or loss shall be recognized * * * if common stock in a corporation is exchanged solely for common stock in the same corporation, or if preferred stock in a corporation is exchanged solely for preferred stock in the same corporation.